UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| OSCAR ENRIQUEZ-GALVEZ, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. |
| | ) | |
| v. | ) | Judge |
| | ) | |
| ALWAYS UNDERGROUND INC., | ) | |
| DAVID PAULIN, and FELICIA WILSON | ) | Magistrate Judge |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff, Oscar Enriquez-Galvez, ("GALVEZ"), by his attorneys, Gaffney & Gaffney P.C., for his Complaint against Defendants, Always Underground, Inc. ("AUI"), David Paulin ("PAULIN") and Felicia Wilson ("WILSON") states:

### Jurisdiction and Venue

1. This action is brought pursuant to the Fair Labor Standards Act, ("FLSA"), (29 U.S.C. § 201, *et. seq.*) to recover unpaid wages. This Court has arising under jurisdiction over GALVEZ's FLSA claim pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 216 (b). The Court has Jurisdiction over Plaintiff's Fraudulent Tax Filing claim under 26 U.S.C. 7434 pursuant to 28 U.S.C. 1337 and 29 U.S.C. 216(b).

2. The Court also has supplemental jurisdiction over GALVEZ's state law claims for violation of the Illinois Minimum Wage Law, ("IMWL"), (820 ILCS 105/1, *et. seq.*), Breach of Contract Claim, the Illinois Wage Payment and Collection Act, ("IWPCA"), (820 ILCS 115/1 *et. seq.*) pursuant to 28 U.S.C. § 1367, which are so related to the federal claims in this action that they form part of the same case or controversy under Article III of the Constitution of the United States of America.

3. Venue for this action properly lies in the Northern District of Illinois, Eastern Division, pursuant to 28 USCS § 1391, as this claim arose in this Judicial District as AUI operates out of Joliet, Illinois.

**Parties**

4. Plaintiff, GALVEZ is a resident of Joliet, Illinois and a former employee of AUI.

5. Defendant, AUI is an Illinois Corporation. AUI transacts business out of a facility in Joliet, Illinois and from an office in Indiana.

6. Felicia Wilson (WILSON) is the President, Director and Shareholder of AIU and on information and belief resides in Lake Village, Indiana. David Paulin (PAULIN) is the husband of WILSON and the Operations Manager as well as an officer, director and shareholder of AUI. On information and belief, PAULIN resides with WILSON in Lake Village, Indiana.

**Common Allegations**

7. AUI is an underground utility installation company specializing in directional boring services and also providing additional underground services including trenching, manholes, hand holes and fiber optic splicing and testing.

8. GALVEZ began working for AUI on or about November 9, 2014. At all times he was to be paid on an hourly rate basis. He was hired at an initial rate of $20.00 per hour. Subsequently, on or about May 25, 2015, GALVEZ received an increase in pay by agreement with DEFENDANTS to $22.00 per hour which is the rate he maintained through the remaining tenure of his employment.

9. AUI involuntarily terminated the employment of GALVEZ on or about December 20, 2016.

10. Throughout GALVEZ's tenure of employment for AUI, GALVEZ preformed manual labor.

11. GAVLEZ typically worked from approximately 6:00 am to 5:00 pm or later Monday through Friday, and usually had to work through his lunch with only a 15-minute break to eat some food. GALVEZ also worked Saturdays on many occasions. Typically, GALVEZ worked 50 to 60 hours per week. For certain AUI projects like the ones at Crystal Lake and in Indiana, Galvez worked as much as 70 to 80 hours per week.

12. GALVEZ would often receive two checks from PAULIN, WILSON and AUI. The first check was a standard payroll check for 40 hours of work at his usual hourly rate which was subject to withholdings for Federal Tax, Social Security, Medicare and Illinois Withholding. In addition, PAULIN, WILSON, and AUI would provide GALVEZ with a second check for at least some, but not all of GALVEZ's overtime hours. The second check came from the general business account of AUI with no withholding taxes taken out. GALVEZ's overtime hours, to the extent paid, were paid at his regular hourly rate but not at an overtime rate as required by the FSLA and IMWL. To cover up its obvious violations of federal and state wage and tax laws, DEFEDANTS would write the word "receipts" in the memo line of the general business account checks and did so repeatedly with GALVEZ and other similarly situated employees to avoid taxes for wages due the state and federal agencies and to lower its own insurance expenses. This scheme was intentional and purposeful.

13. PAULIN and WILSON refused to pay GALVEZ all of his overtime hours worked.

**Count I – FLSA Action**

3

GALVEZ, by his attorneys Gaffney & Gaffney, P.C., for his Count I Complaint brought pursuant to the Fair Labor Standards Act (FLSA) against AUI, PAULIN and WILSON, states:

1-13.   GALVEZ incorporates herein paragraphs 1 through 13 of the above Allegations as paragraphs 1 through 13 of this Count I as if fully set forth herein, verbatim.

14.   At all times relevant, AUI had fifteen (15) or more employees, and its annual volume of sales or business exceeded $500,000.

15.   GALVEZ and other employees worked in interstate commerce and often travelled out of state and sold or handled goods in interstate commerce.

16.   AUI is engaged in interstate commerce.

17.   At all times relevant, GALVEZ was an "employee" of AUI as defined by the FLSA. 29 U.S.C. § 203(e).

18.   At all times relevant, AUI was an "employer" as that term is defined by the FLSA. 29 U.S.C. § 203(d).

19.   GALVEZ worked in excess of forty (40) hours per week on a regular basis and AUI, PAULIN and WILSON directed or knowingly permitted GALVEZ to work in excess of forty (40) hours per week.

20.   GALVEZ was an hourly rate employee.

21.   GALVEZ was entitled to be paid overtime wages at the rate of one and one-half times his regular rate of pay for all of his hours worked in excess of forty (40) hours per week.

22.   AUI, PAULIN and WILSON violated the FLSA by failing to pay GALVEZ an overtime rate of not less than one and one-half times his regular rate.  AUI, PAULIN and WILSON only paid GALVEZ his regular rate and did so only some but not all of his overtime hours worked.

23. AUI, PAULIN and WILSON also violated the FLSA by failing to pay GALVEZ even a minimum wage for many hours worked by GALVEZ. 29 U.S.C. § 206.

24. PAULIN and WILSON are "employers" as that term is defined by the FLSA. 29 U.S.C. § 203(d). PAULIN and WILSON possessed the power to hire and fire employees. They supervised and controlled employee work schedules, conditions of employment, determined the rate and method of employee payment, maintained employment records, reported employee wages, often improperly, to State and Federal bodies such as the Illinois Department of Employment Security, Illinois Department of Labor, Internal Revenue Service and Social Security Administration. As owners and officers of the company, they controlled how and when employees were to be paid, including, but not limited to GALVEZ. Together, they profited by failing to pay GALVEZ and other employees, similarly situated, in a lawful manner.

25. Defendant's failure to pay overtime wages and failure to pay even a minimum wage for many of GALVEZ'S hours worked was a willful violation of the FLSA.

26. In addition to wages due and owing, GALVEZ is also entitled to an award of liquidated damages in an amount equal to the amount of unpaid wages due.

27. GALVEZ demands Trial by Jury on Count I.

WHEREFORE, Oscar Enriquez-Galvez respectfully requests that this Honorable Court declare Defendants, Always Underground, Inc., David Paulin and Felicia Wilson to each jointly and severally be in violation of the FLSA and to:

> a. Enter a judgement in the amount of unpaid wages and overtime wages for all time worked by GALVEZ in excess of forty (40) hours in individual work weeks and wages due for unpaid hours;

      b. Award liquidated damages to GALVEZ in an amount equal to the amount of unpaid wages;

      c. Award reasonable attorneys' fees and costs; and

      d. Grant such additional or alternative relief as this Honorable Court deems just and proper under the instant circumstances.

### Count II – Illinois Minimum Wage Law, ("IMWL"), Action

GALVEZ, by his attorneys, Gaffney & Gaffney P.C., for his Count II Complaint brought pursuant to the IMWL against AUI, PAULIN and WILSON, states:

1-26. GALVEZ incorporates herein all of the Allegations through Count I paragraphs 1 through 26 as paragraphs 1 through 26 of this Count II as if fully set forth herein, verbatim.

28. At all times relevant, GALVEZ was an "employee" of AUI as defined by the IMWL. 820 ILCS 105/3(d).

29. At all times relevant, AUI was an "employer" as that term is defined by the IMWL. 820 ILCS 105/3(c).

30. This Count arises from Defendants' failure to pay GALVEZ minimum wages for all time worked and overtime wages for all time worked in excess of forty (40) hours in individual work weeks in violation of the IMWL.

31. In addition to AUI, PAULIN and WILSON are defined as an "employer" pursuant to the IMWL. 820 ILCS 105/3(c).

32. Defendants violated the IMWL by failing to pay GALVEZ a minimum wage for many of GALVEZ's hours worked.

33. Defendants also violated the IMWL by failing to pay GALVEZ an overtime rate at one and one-half times his regular rate of pay for hours worked in excess of 40 hours per week.

34. GALVEZ does not have a claim pending with the Illinois Department of Labor against AUI.

35. Pursuant to 820 ILCS 105/12(a), GALVEZ is entitled to recover from Defendants unpaid wages for three years prior to the filing of this suit plus penalties, attorney fees and costs of this action.

WHEREFORE, Oscar Enriquez-Galvez respectfully requests that this Honorable Court declare that Defendants, AUI, PAULIN and WILSON, have each violated the IMWL and that they are jointly and severally responsible for the following:

   a. A judgement in the amount of all wages due to Plaintiff for all hours worked and calculated properly with time and one-half due for all hours worked in excess of 40 per week as provided by the IMWL;

   b. Award statutory damages for Plaintiff pursuant to the formula set forth in 820 ILCS 105/12(a) and 815 ILCS 205/2;

   c. Award reasonable attorneys' fees and costs of this action as provided by the IMWL; and

   d. Grant such other and further relief as this Honorable Court deems just and proper under the instant circumstances.

### Count III – Breach of Contract (AUI Only)

GALVEZ, by his attorneys, Gaffney & Gaffney P.C., for his Count III Claim against AUI, states:

1-13.　　GALVEZ incorporates herein paragraphs 1 through 13 of the preliminary Allegations of this Complaint as paragraphs 1 through 13 of this Count III Claim for Breach of Contract as if fully set forth herein, verbatim.

14.　　At all times relevant, GALVEZ had an employment agreement with AUI which provided, in part, that in exchange for GALVEZ preforming duties and responsibilities as assigned that GALVEZ would receive an agreed amount hourly rate for all hours worked. As set forth above, the hourly rate changed over time but for the majority of GALVEZ's employment, his agreed hourly rate of pay was $20.00 per hour. In approximately May, 2015, the parties orally agreed that GALVEZ would be paid at the rate of $22 per hour.

15.　　GALVEZ performed all conditions precedent that GALVEZ was required to perform in order to receive his agreed upon hourly rate for all hours worked for an on behalf of AUI.

16.　　AUI breached the party's agreement by failing to pay GALVEZ for all his hours worked pursuant to their agreement.

17.　　As a direct and proximate result thereof, GALVEZ has sustained damages arising out of AUI's failure to pay GALVEZ his agreed upon hourly rate for all his hours worked in an amount in excess of $15,000.

18.　　GALVEZ demands a Trial by Jury on Count III.

WHEREFORE, GALVEZ seeks judgement against AUI for an amount in excess of $15,000.00 plus costs.

### Count IV – Illinois Wage Payment and Collection Act (IWPCA)
### Claim Against all Defendants

GALVEZ, by his attorneys, Gaffney & Gaffney, P.C., for his Count IV Claim brought against AUI, PAULIN and WILSON for violation of the IWPCA, states:

1-18. GALVEZ incorporates herein paragraphs 1 through 18 of Count III as paragraphs 1 through 18 of this Count IV as if fully set forth herein, verbatim.

19. At all times relevant, GALVEZ was an "employee" of AUI as defined by the IWPCA. 820 ILCS 115/2.

20. At all times relevant, AUI was an "employer" as that term is defined by IWPCA. 820 ILCS 115/2.

21. AUI breached the terms of the party's agreement by failing to pay GALVEZ for all of his hours worked at his agreed upon hourly rate.

22. GALVEZ worked a substantial number of hours that AUI failed and refused to pay.

23. PAULIN and WILSON are officers and agents of AUI who knowingly permitted AUI to violate the provisions of the IWPCA and are thereby deemed to be employers of GALVEZ under the IWPCA. 820 ILCS 115/13

24. GALVEZ does not have a claim against AUI pending with the Illinois Department of Labor. Although GALVEZ filed a claim, he withdrew that claim so as to proceed in Court under the IMWL and IWPCA.

25. Defendants' violation of the IWPCA was willful and intentional. At all times, Defendants' had the ability to pay GALVEZ his wages and have failed and refused to do so.

WHEREFORE, GALVEZ requests the following relief against all Defendants, AUI, PAULIN and WILSON, jointly and severally pursuant to the IWPCA:

    a. A judgement in the amount of unpaid wages due Plaintiff as provided by the IWPCA:

b.  Statutory damages in the amount of 2% of the amount of any such underpayments for each month following the date of payment during which such underpayments remain unpaid as set forth in 820 ILCS 115/14(a);

c.  Reasonable attorneys' fees and costs of this action as provided by the IWPCA; and

d.  Other and further relief as this Honorable Court deems just and proper under the instant circumstances.

### COUNT V – False Tax Filing Claim Under 26 USC § 7434

GALVEZ, by his attorneys, Gaffney & Gaffney, P.C., for his Count V Claim brought against AUI, PAULIN and WILSON for fraudulent filing of federal tax information returns pursuant to 26 USC § 7434, states:

1-13. GALVEZ incorporates herein paragraphs 1 through 13 of the common allegations set forth above as if fully set forth herein, verbatim.

14. This count arises from Defendants' violation of 26 USC § 7434.

15. Defendants' would typically pay GALVEZ with both a payroll check with taxes and withholdings taken out and in addition thereto, often paid GALVEZ wages out of Defendant's general business account without any taxes or withholdings taken out.

16. In order to cover up Defendants' fraud and deceit, Defendants' would often label the payment of wages to GALVEZ and others from the general business account with the word "receipts" in the memo line of the checks. This was part of the scheme to limit tax and insurance expenses.

17. The payments to GALVEZ from Defendants' general business account were not reported to the Internal Revenue Service or any other state or federal governmental agencies as wages even though they actually represented wages paid.

18. During the years 2014, 2015 and 2016, Defendants' filed false federal information tax statements with the Internal Revenue Service that purposely and intentionally underreported the wages paid to Plaintiff. For each of those three years, Defendants' filed employer W2 and W3 wage statements for GALVEZ which purposely and intentionally underreported GALVEZ's wages. Defendants' did not include any of the wages paid to GALVEZ from Defendants' general business account in the amount stated within the Defendants' form W2s and W3s filed with the Internal Revenue Service. In doing so Defendants purposely underreported its liability for Federal Unemployment Tax (FUTA) and contributions to the United States Social Security Administration and Medicare.

19. For the years 2014, 2015 and 2016, when Defendants' reported Plaintiff's wage earnings to the Internal Revenue Service on Internal Revenue Service forms W2 and W3, Defendants purposely and intentionally underreported Plaintiff's wages and failed to include all wages actually paid to Plaintiff.

20. Defendants' willfully lied to the federal government in filing false W2 and W3 wage statements for GALVEZ and did so because it financially benefited Defendants.

22. As a result of not including all of GALVEZ's wages paid on the false W2 and W3 returns for GALVEZ, Defendants' paid less social security contributions, worker's compensation insurance payments which financially benefited Defendants and financially harmed GALVEZ.

23. Defendants filings of false W2 and W3 tax statements was part of Defendants' willful and purposeful scheme to defraud Plaintiff, the federal Social Security Administration,

Medicare, federal Unemployment Tax Administration and Illinois Department of Employment Security. Additionally, the false W2 and W3 filings was part of Defendants' scheme to defraud GALVEZ from receiving proper overtime wages pursuant to the FLSA and IMWL.

24.     Defendants engaged in a pattern and practice of engaging in false and deceptive payroll practices and false and deceptive reporting of wages to the federal and state tax authorities.

25.     26 USC § 7434 provides that "if any person willfully files a fraudulent information return with respect to payments purported to be made to any person, such other person may bring a civil action for damages against a person so filing such a return."

26.     26 USC § 7434(b) allows for statutory damages of $5,000 per year or in the alternative actual damages plus reasonable attorney's fees.

27.     GALVEZ has suffered actual damages arising out of Defendants' filing of false tax information returns during the years 2014, 2015 and 2016 or in the alternative GALVEZ should be entitled to the statutory award of $5,000 for each of 2014, 2015 and 2016.

WHEREFORE, GALVEZ seeks judgment against Defendants for all of his economic harm and damages arising out of Defendants' violation pursuant to 26 USC § 7434, plus statutory damages, attorney's fees and cost of suit.

## COUNT VI – Retaliatory Discharge (AUI Only)

GALVEZ, by his attorneys, Gaffney & Gaffney P.C., for his Count VI Claim against AUI, states:

1-13.     GALVEZ incorporates herein paragraphs 1 through 13 of the preliminary Allegations of this Complaint as paragraphs 1 through 13 of this Count VI Claim for Retaliatory Discharge as if fully set forth herein, verbatim.

14. In June 2015, GALVEZ sustained a work-related injury to his right shoulder and obtained medical treatment from then on. An MRI revealed a torn labrum. An Orthopedic surgeon recommended surgery. GALVEZ continued to work through the pain and AUI did not always honor his work restrictions. GALVEZ continued to aggravate his shoulder injury and obtain medical treatment.

15. GALVEZ retained the services of an attorney who vigorously prosecuted GALVEZ's claim for Worker's Compensation Act benefits.

16. The GALVEZ claim under the Illinois Worker's Compensation Act for full statutory benefits became contentious between GALVEZ through his attorney and AUI at the Illinois Industrial Commission.

17. Because of the contentious nature of the litigation and the fact that GALVEZ, through his attorney, sought full benefits and did not quickly or easily resolve or settle his claim for Worker's Compensation Act benefits, AUI developed a retaliatory animus against GALVEZ.

18. As of December 20, 2016, the Worker's Compensation Act claim filed by Galvez with the Illinois Industrial Commission remained pending and unresolved. AUI sought a reason to terminate GALVEZ as a result.

19. Because GALVEZ, by his attorney, continued to vigorously litigate that Worker's Compensation Act claim with the Illinois Industrial Commission and prosecuted that claim in the interests of GALVEZ, AUI made the decision to find a pretextual reason to terminate the employment of GALVEZ. AUI claimed it had no more work which was a false reason to terminate.

20. On or about December 20, 2016, AUI terminated GALVEZ for pretextual reasons because of the GALVEZ Worker's Compensation Act claim for benefits.

21. AUI 's terminated the employment of GALVEZ because GALVEZ had made reasonable efforts, through his attorney, to obtain all the benefits GALVEZ believed he was entitled to under the Illinois Worker's Compensation Act.

22. The December 20, 2016, termination of GALVEZ was a retaliatory discharge arising out of the filing and prosecution of GALVEZ's legally protected rights under the Illinois Worker's Compensation Act which violates clearly mandated Illinois public policy.

23. As a direct and proximate result thereof, GALVEZ has sustained damages which includes the value of lost income and benefits as well as emotional distress, pain, anxiety and loss of enjoyment of life.

24. The retaliatory discharge of GALVEZ was willful, wanton, intentional and a clear violation of the right of GALVEZ to legally prosecute his claim under the Illinois Worker's Compensation Act. As a result, thereof, GALVEZ should be awarded punitive damages in addition to compensatory damages.

25. GALVEZ demands trial by jury on Count VI.

WHEREFORE, GALVEZ seeks judgment against Always Underground, Inc. in an amount excess of $100,000 for compensatory damages plus punitive damages and costs.

Respectfully submitted,

*Glenn R. Gaffney*
Glenn R. Gaffney
Attorney for Oscar Enriquez-Galvez

## JURY DEMAND

Galvez demands trial by Jury on Count I, Count III, and Count VI.

*Glenn R. Gaffney*
Attorney for Oscar Enriquez-Galvez

Glenn R. Gaffney (6180598)
Gaffney & Gaffney P.C.
1771 Bloomingdale Road
Glendale Heights, IL 60139
(630) 462-1200
Fax (630) 462-7698
*glenn@gaffneylawpc.com*